UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

United States of America,

        Plaintiff,

  vs.                          REPORT AND RECOMMENDATION

Ryan Roy Cloud,

        Defendant.        Crim. No. 10-47 (RHK/RLE)

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

## I.  Introduction.

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendant's Motion to Suppress Evidence Obtained as the Result of a Search and Seizure.[1]

A Hearing on the Motion was conducted on March 29, 2010, at which time, the Defendant appeared personally, and by Caroline Durham, Assistant Federal Defender,

---

[1]Originally, the Defendant had also challenged the legitimacy of his oral and written statements to law enforcement.  However, in the Defendant's post-Hearing brief, see, Docket No. 34, the Defendant withdrew his Motion to Suppress Statements. Id. at p. 5 of 6 ("At this time, Mr. Cloud withdraws his motion to suppress that statement.").

and the Government appeared by Clifford B. Wardlaw, Assistant United States Attorney. During that Hearing, the Defendant made an oral Motion to Suppress Evidence Obtained as a Result of a Search and Seizure, which he memorialized with a written Motion shortly thereafter. Evidence related to that Motion was taken during the Hearing, the Defendant, and the Government, have submitted post-Hearing Memoranda of Law, and we took the Motion under advisement on April 7, 2010. For reasons which follow, we recommend that the Motion to Suppress be denied.[2]

## II. Factual and Procedural Background

In his Indictment, the Defendant, who is an Indian, is charged with a Murder, on February 10, 2010, of Timothy Geionety, who was also an Indian. The Murder is alleged to have been committed on February 10, 2010, within the exterior boundaries of the Red Lake Indian Reservation, in this District, in violation of Title 18 U.S.C. §§1111, 1151 and 1153(a). See, Indictment, Docket No. 18.

---

[2]As noted, at the close of the Hearing, the parties requested leave to submit post-Hearing briefing. Leave was granted, and the Defendant submitted a brief on April 5, 2010, and the Government filed its response on April 7, 2010, and accordingly, the Motions were taken under advisement on that date. See, Title 18 U.S.C. §3161(h) (1)(D) and (H); Henderson v. United States, 476 U.S. 321, 330-32 (1986)(discussing the provision prior to the 2008 restructuring of the statute subparts); United States v. Blankenship, 67 F.3d 673, 676-677 (8th Cir. 1995)(same).

At the Hearing on the Motion, the Government adduced the testimony of FBI Special Agent Michael Iverson ("Iverson"). See, <u>Transcript from Digital Recording, Docket No. 33</u>, at p. 13. Iverson testified that the Defendant was arrested by the Red Lake Police Department at approximately 10:00 o'clock p.m., on February 1, 2010, and held at the Red Lake Police Department overnight. <u>Id.</u> at pp. 15-16. On February 2, 2010, at approximately 2:00 o'clock p.m., Iverson and Special Agent Robert Mertz ("Mertz") interviewed the Defendant in a meeting room at the Red Lake Jail. <u>Id.</u> at p. 16. Iverson testified that, prior to the interview, he and Mertz read the Defendant a standard form which lists the Defendant's constitutional rights, and that the Defendant waived those rights and signed the waiver form. <u>Id.</u> at p. 17. The Government introduced a copy of that waiver form, which was admitted solely for purposes of the Motion, as Government Exhibit No. 1.

Iverson testified that he was aware that the Defendant had been drinking on the night of his arrest, and that it is Iverson's standard practice to wait before interviewing a person who has been drinking. <u>Id.</u> at p. 15. Iverson testified that he did not know the extent of the Defendant's intoxication, but that the Defendant had been judged to be under the influence of alcohol at his arrest, and that Iverson had observed several empty beer cans, and empty large liquor bottles, at the scene. <u>Id.</u> at pp. 15 and 25-26.

Iverson testified that he waited to begin his interview of the Defendant until approximately 2:00 o'clock p.m., on February 2, 2010, or approximately 16 hours after the Defendant's arrest. Id. at p. 16. Iverson testified that, at the interview, the Defendant appeared to be upset or worried, was a little hunched over, did not appear to be intoxicated, but did appear to be somewhat disheveled and hung over. Id. at pp. 16-17 and 34. Iverson testified that the Defendant stated to him that he felt that he was still drunk, id. at p. 26, but that the Defendant did not appear to be drunk, that Iverson did not detect any odor of alcohol, that he was able to converse with the Defendant, that the Defendant was able to write out a statement by hand, which Iverson was able to read and understand, and that Iverson judged the Defendant not to be intoxicated at the time of the interview. Id. at pp. 34-35.

During the course of the interview, Iverson and Mertz requested that the Defendant submit to a buccal swab, in order to obtain a DNA sample to compare to DNA extracted from blood found at the scene of the alleged crime. Id. at p. 19. Iverson testified that, prior to taking the buccal swab, he and Mertz informed the defendant of how the swab would be taken, and that it would be compared with blood at the scene, but they did not explain the meaning of DNA. Id. at p. 21. Iverson testified that he informed the Defendant that the buccal swab was a voluntary

submission, but he could not recall exactly what words he used in explaining that point to the Defendant. Id. at pp. 21-24. Iverson testified that he asked the Defendant to sign a consent form, which the Defendant signed, and which was admitted as Government Exhibit 2, solely for purposes of the Motion. The Consent to Search Form contains the following language: "I have been advised of my right to refuse consent," and "I give this permission voluntarily." The Form bears the date of February 2, 2010, and is signed by the Defendant, and by Iverson. See, Government Exhibit 2.

In his Motion, the Defendant contends that the results of the buccal swab should be suppressed, because he did not knowingly give his consent to the buccal swab, as he was allegedly intoxicated at the time of the interview, did not understand that he could refuse his consent to the swab, and did not understand the meaning of the term "voluntary submission," or what DNA meant. The Government argues that the Defendant's consent was voluntarily given, and that the evidence obtained as a result should not be suppressed.

III.  Discussion

A.  Standard of Review.  The Government does not challenge the Defendant's assumption that the taking of a DNA sample through a buccal swab, so as to compare

it to DNA discovered at the scene of an alleged crime, is a search that is subject to the proscriptions of the Fourth Amendment. Rather, as noted, the Government and the Defendant dispute whether the Defendant's consent to have the buccal swab taken was valid. Accordingly, we confine our analysis to the question of consent.

Generally, in the context of blood tests, "[c]ourts must consider 'whether [officials] were justified in requiring [the defendant] to submit to the test, [and] whether the means and procedures employed in taking his blood respected relevant Fourth Amendment standards of reasonableness.'" Kruger v. Erickson, 875 F. Supp. 583, 588 (D. Minn. 1995), quoting Schmerber v. California, 384 U.S. 757, 768 (1966). In determining the reasonableness of a search, Courts must balance "'the need to search against the invasion which the search entails.'" McDonell v. Hunter, 809 F.2d 1302, 1307 (8th Cir. 1987), quoting, in turn, Camara v. Municipal Court, 387 U.S. 523, 537 (1967). Courts have recognized the reasonableness of drawing blood samples from suspects. See, United States v. Long Feather, 299 F.3d 915, 919 (8th Cir. 2002)("A defendant can be compelled [] to give a blood sample."), citing Schmerber v. California, supra at 768.

Regardless of the reasonableness of any search, "[s]earch warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could

be required where intrusions into the human body are concerned." Schmerber v. California, supra at 770. Absent consent, warrantless searches and seizures are constitutional only if supported by a showing of probable cause, and exigent circumstances. See, Kirk v. Louisiana, 536 U.S. 635, 638 (2002)(noting that "police officers need either a warrant or probable cause plus exigent circumstances."); Welsh v. Wisconsin, 466 U.S. 740, 748 (1984); Payton v. New York, 445 U.S. 573 (1980); United States v. Walsh, 299 F.3d 729, 733 (8th Cir. 2002), cert. denied, 537 U.S. 1066 (2002)("'A warrantless search is reasonable when justified by both probable cause and exigent circumstances.'"), quoting United States v. Parris, 17 F.3d 227, 229 (8th Cir. 1994), cert. denied, 511 U.S. 1077 (1994)); Berglund v. City of Maplewood, 173 F. Supp.2d 935, 943 (D. Minn. 2001)(explaining that "there is no need to obtain a warrant if (1) there is probable cause and (2) there are exigent circumstances requiring immediate action.").

Additionally, "'[a]n officer with consent needs neither a warrant nor probable cause to conduct a constitutional search.'" United States v. Pennington, 287 F.3d 739, 746 (8th Cir. 2002), cert. denied, 537 U.S. 1022 (2002), quoting United States v. Jenkins, 92 F.3d 430, 436 (6th Cir. 1996), cert. denied, 520 U.S. 1170 (1997), citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). "Whether or not the consent

was voluntary must be established by examining the totality of the circumstances, including "'both the characteristics of the accused and the details of the interrogation.'" United States v. Bradley, 234 F.3d 363, 366 (8th Cir. 2000), quoting United States v. Chaidez, 906 F.2d 377, 380-81 (8th Cir. 1990), quoting, in turn, Schneckoth v. Bustamonte, supra at 226. "We consider the following characteristics of the individual to determine whether their [sic] consent was truly voluntary: age, intelligence, intoxication, advice of Miranda rights, and previous arrests." United States v. Reinholz, 245 F.3d 765, 780 (8th Cir. 2001), cert. denied, 534 U.S. 896 (2001), citing United States v. Chaidez, supra at 381; see also, United States v. Urbina, 431 F.3d 305, 309 (8th Cir. 2005); United States v. Alcantar, 271 F.3d 731, 737 (8th Cir. 2001), cert. denied, 535 U.S. 964 (2002); see also, United States v. Esquivel, 507 F.3d 1154, 1159 (8th Cir. 2007), quoting United States v. Esquivias, 416 F.3d 696, 700 (8th Cir. 2005); United States v. Barnum, 564 F.3d 964, 969 (8th Cir. 2009).

In addition to the characteristics of the defendant, "[w]e also consider the following characteristics of the environment in which the individual's consent was given, so as to determine whether their [sic] consent was truly voluntary: length of detention, threats and misrepresentations by police, whether the individual is in

custody or under arrest, whether it is a public or private place, and the suspect's contemporaneous objections and representations." United States v. Reinholz, supra at 780; see also, United States v. Va Lerie, 424 F.3d 694, 709 (8th Cir. 2005)[en banc], cert. denied, 548 U.S. 903 (2006); United States v. Mendoza-Cepeda, 250 F.3d 626, 629 (8th Cir. 2001)(listing factors to be considered as to voluntariness of consent to search).

Ultimately, no factor is dispositive, and "[c]onsent is voluntary if it was '"the product of an essentially free and unconstrained choice by its maker,"' * * * rather than 'the product of duress or coercion, express or implied.'" United States v. Bradley, supra at 366, quoting United States v. Chaidez, supra at 380, quoting, in turn, Schneckloth v. Bustamonte, supra at 225, 227. "[T]he question of whether a consent to search was in fact 'voluntary' or was the product of duress or coercion, expressed or implied, is a question of fact to be determined from the totality of all circumstances." Schneckloth v. Bustamonte, supra at 227; see also, United States v. Fleck, 413 F.3d 883, 891-92 (8th Cir. 2005). "The government bears the burden of proving voluntary consent by a preponderance of the evidence and must show that the defendant behaved in such a manner that the officer reasonably believed that the search was consensual." See, United States v. Esquivias, supra at 700, citing United

States v. Cedano-Medina, 366 F.3d 682, 684-85 (8th Cir. 2004), cert. denied, 543 U.S. 1035 (2004); United States v. White, 81 F.3d 775, 780 (8th Cir. 1996), cert. denied, 519 U.S. 1011 (1996).

B. Legal Analysis. As noted, the Government introduced the Consent to Search Form, which the Defendant had signed before witnesses, and which clearly states that the Defendant had the right to refuse consent, and that his consent would be voluntary. See, Government Exhibit 2. The signed Consent Form is evidence that the Defendant voluntarily consented to the taking of the buccal swab. See, United States v. Wattree, 544 F. Supp.2d 1262, 1267 (D. Kan. 2008)("The consent also was specific and unequivocal, as [the defendant's wife] signed the consent to search form that specifically listed her rights and gave consent to search that particular residence."); United States v. Gallardo, 495 F.3d 982, 991 (8th Cir. 2007)("An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver * * *."); cf., United States v. Parson, 599 F. Supp.2d 592, 608 and n. 9 (W.D. Pa. 2009)(finding that consent was not voluntarily given where the consent form was generic, did not contain language about the purpose of the search and, in any case, the defendant was unable to read the form due to cataracts).

In addition, though the Defendant contends that his consent was not knowing, because Iverson did not explain the meaning of a "voluntary submission," the language of the Consent Form is clear and simple, and plainly informs the reader that there is no requirement to consent, and that any consent is voluntarily given. As a consequence, we find that the Defendant was sufficiently apprised of the voluntary nature of his consent and, in addition, we observe that, while it may factor into the totality of the circumstances analysis, "[t]he Supreme 'Court has rejected in specific terms the suggestion that police officers must always inform citizens of their right to refuse when seeking permission to conduct a warrantless consent search.'" United States v. Va Lerie, supra at 710, quoting United States v. Drayton, 536 U.S. 194, 206 (2002); see also, United States v. Esquivias, supra at 701 ("While the officers did not inform [the defendant] of his right to refuse consent, a defendant need not be aware, nor must an officer inform him, of his right to refuse consent for his consent to be voluntary."), citing United States v. Becker, 333 F.3d 858, 861 (8th Cir. 2003); United States v. Alcantar, supra at 737 ("Although [the defendant] was not advised of his right to refuse consent, that was not in and of itself sufficient to find that consent was not voluntarily given."), citing United States v. Zapata, 180 F.3d 1237, 1242 (11th Cir. 1999).

The Defendant also contends that he did not knowingly give his consent, when he signed the Consent to Search Form, because Iverson did not explain to him what DNA meant. However, Iverson credibly testified, at the Hearing, that he told the Defendant that the DNA sample taken from his cheek would be compared to a blood sample that was recovered from the scene of the alleged crime. See, <u>Transcript</u>, supra at p. 21. Thus, while the Defendant may not have been aware of the intricacies of DNA comparisons, we find that he knew the purpose of the test -- namely, to complete a comparison to evidence that the police recovered from the scene -- and, therefore, Iverson's explanation was sufficient to make the Defendant aware of the circumstances surrounding the request for the buccal swab.

Lastly, the Defendant contends that his consent for the buccal swab was not voluntarily given because, he argues, he was intoxicated at the time. Where, as here, a defendant challenges the validity of his consent based upon the influence of alcohol or drugs, our inquiry remains focused on whether the Defendant's "'will [was] overborne and his capacity for self-determination critically impaired,' such that his consent to the search * * * was involuntary." <u>United States v. Willie</u>, 462 F.3d 892, 896 (8th Cir. 2006)[modification added], cert. denied, 549 U.S. 1292 (2007), quoting <u>United States v. Watson</u>, 423 U.S. 411, 424 (1976); see also, <u>United States v. Rambo</u>,

789 F.2d 1289, 1297 (8th Cir. 1986)("'The question is one of mental awareness so that the act of consent was the consensual act of one who knew what he was doing and had a reasonable appreciation of the nature and significance of his actions.")[internal quotations omitted].

Here, the Government adduced the credible testimony of Iverson, who testified that the Defendant was arrested at approximately 10:00 o'clock p.m., on February 1, 2010, and that, at that time, the officers at the scene concluded that the Defendant was under the influence of alcohol. The Defendant was subsequently held at the Red Lake Jail overnight. At 2:00 o'clock p.m. on February 2, 2010, approximately sixteen (16) hours after the Defendant's arrest, during which time the Defendant had no opportunity to consume alcohol, Iverson and Mertz began their interview of the Defendant at the Red Lake Jail. In an analogous inquiry, the Eighth Circuit has found that the time lapse, between an arrest and an interview, is relevant to the determination of whether an individual, who has consumed alcohol or drugs prior to arrest, was capable of voluntarily waiving his rights, and has held a waiver valid where there was evidence of a two and a half hour passage of time. See, United States v. Henderson, 553 F.3d 1163 (8th Cir. 2009). Here, while the Defendant may have been impaired at his arrest, the sixteen (16) hour period of abstention, prior to his consent to the buccal

swab, demonstrates that whatever influence alcohol may have had over the Defendant was effectively diminished -- if not entirely eliminated -- by the time that his consent was given.

In addition, Iverson credibly testified that the Defendant did not appear to be intoxicated at the time of the interview, and that, in spite of the Defendant's statement that he felt that he was still drunk from the night before, Iverson observed that the Defendant did not smell of alcohol, was able to complete a handwritten statement, which Iverson found to be legible, and was able to answer the Agents' questions. Further, there is no evidence to suggest that Iverson or Mertz exploited the Defendant's asserted condition, or offered him promises, made threats, or engaged in any other coercive behavior, and the evidence demonstrates that Iverson and Mertz informed the Defendant of his <u>Miranda</u> rights before the interview began.

Based on the Record before us, we find that the evidence of the Defendant's behavior, demeanor, and abilities, at the time that he gave his consent, coupled with the time between his arrest and interview, persuasively demonstrates, by a preponderance of the evidence, that the Defendant was not so intoxicated at the time of the interview as to be unaware of the circumstances, such as to render his consent to the buccal swabs involuntary, and there is no evidence to suggest that the Defendant was

unable to comprehend the situation for any other reason related to his mental or physical health. See, <u>United States v. Johnson</u>, 563 F.2d 936, 939 (8th Cir. 1977), cert. denied 434 U.S. 1021 (1978)("If the trial court had found that by reason of extreme intoxication the defendant's consent was not the product of a rational intellect and free will, then the consent would not have been valid[,]" but "[t]here was no evidence in this case which indicated that the defendant was in a condition of such extreme intoxication at the time he signed the consent."); <u>United States v. Willie</u>, supra at 892 ("[The defendant] may have been under the influence of methamphetamine at the time of his arrest, but the evidence does not suggest that he was so intoxicated that he was not 'competent to understand the nature of his acts.'"), quoting <u>United States v. Rambo</u>, supra at 1297; <u>United States v. Ramey</u>, 711 F.2d 104, 107 (8th Cir. 1983)("[The defendant] had been in an accident and appeared to be under the influence of alcohol, but he was aware of what was happening and appreciated the significance of the taking of the blood sample."); <u>United States v. Watters</u>, 572 F.3d 479, 483-84 (8th Cir. 2009), cert. denied, --- U.S. ---, 130 S.Ct. 645 (2009)(the defendant's intoxication did not invalidate his consent, where he was an adult with a significant criminal history and familiarity with the procedural safeguards afforded

him under the law, the incident was in a public place, he was coherent and able to answer questions, and was not threatened, intimidated, or promised anything).

Further, while we find the fact that the Defendant was in custody at the time of his consent to the buccal swab to be relevant, it is not enough, on this Record, to invalidate the voluntariness of the consent, particularly where the Defendant was apprised of, and waived, his <u>Miranda</u> rights at the outset of the interview. See, <u>United States v. Eastman</u>, 256 F. Supp.2d 1012, 1021 (D.S.D. 2003).

In sum, after careful consideration of the submissions, evidence, and testimony at the Hearing, we find that the Defendant voluntarily consented to the taking of a buccal swab, at the interview on February 2, 2010, and we recommend the denial of the Motion to Suppress the evidence resulting from that search.[3]

NOW, THEREFORE, It is --

---

[3]The Defendant also contends, in his written Motion, that the buccal swab is the result of an unlawful arrest. The Defendant's Memorandum contains no argument on the point, and no evidence or testimony was introduced at the Hearing on the subject of the lawfulness of the Defendant's arrest. Accordingly, we recommend denial of the Motion to Suppress on that asserted ground, as there is no basis upon which to conclude that the Defendant's arrest was unlawful. See, <u>United States v. Edwards</u>, 563 F. Supp.2d 977, 994 (D. Minn. 2008).

RECOMMENDED

That the Defendant's Motion to Suppress Evidence Obtained as a Result of a Search and Seizure [Docket No. 31] be denied.

Dated:  April 19, 2010                           *s/Raymond L. Erickson*
                                                 Raymond L. Erickson
                                                 CHIEF U.S. MAGISTRATE JUDGE

## NOTICE

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than May 3, 2010**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than May 3, 2010**, unless all interested parties

stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the

transcript in order to resolve all of the objections made.